IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CHAMPION BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 4: 08-CV-01807 CDP |
| vs. | ) | |
| | ) | |
| REGIONAL DEVELOPMENT, LLC, | ) | **JURY TRIAL DEMANDED** |
| | ) | **ON ALL COUNTS** |
| and | ) | |
| | ) | |
| WALTER M. BRAUER. III | ) | |
| | ) | |
| and | ) | |
| | ) | |
| KIMBERLY A. BRAUER, | ) | |
| | ) | |
| Defendants. | ) | |

## ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

Defendants Regional Development, LLC ("Regional"), Walter M. Brauer. III ("Walter Brauer") and Kimberly A. Brauer ("Kim Brauer), (hereinafter, collectively, "Regional Development"), by and through their undersigned attorneys, and for their Answer against Plaintiff Champion Bank (hereinafter "Champion"), state as follows:

## PARTIES, JURISDICTION AND VENUE

1. Regional Development has insufficient information to form a belief as to the truth of the allegations contained in Paragraph 1, and therefore denies the same.

2. Regional Development admits the allegations contained in Paragraph 2.

3. Regional Development admits the allegations contained in Paragraph 3.

4. Regional Development admits the allegations contained in Paragraph 4.

5.    Regional Development states that Paragraph 5 is a legal conclusion and denies all allegations contained in Paragraph 5.

6.    Regional Development states that Paragraph 6 is a legal conclusion and denies all allegations contained in Paragraph 6.

## COUNT I:  BREACH OF CONTRACT

## (SUIT ON PROMISSORY NOTE)

7.    For its response to Paragraph 7 of Count I, Regional Development incorporates by reference its responses to Paragraphs 1 through 6 of the allegations set forth in Champion's Complaint as if fully set forth herein.

8.    Regional states that the document speaks for itself, and denies all allegations contained in Paragraph 8.

9.    Regional states that the document speaks for itself. and denies all allegations contained in Paragraph 9.

10.    Regional states that the document speaks for itself, denies that the loan is secured by the Commercial Guarantee. and further denies all other allegations contained in Paragraph 10.

11.    Regional states that the document speaks for itself, denies that the loan is secured by the Commercial Guarantee. and further denies all other allegations contained in Paragraph 11.

12.    Regional states that the document speaks for itself. and denies all allegations contained in Paragraph 12.

13.    Regional denies the allegations contained in Paragraph 13.

14.     Regional states that the document speaks for itself, and denies all allegations contained in Paragraph 14.

15.     Regional states that the document speaks for itself, and denies all allegations contained in Paragraph 15.

16.     Regional states that the document speaks for itself and denies all allegations contained in Paragraph 16.

17.     Regional states that the document speaks for itself and denies all allegations contained in Paragraph 17.

18.     Regional states that the document speaks for itself and denies all allegations contained in Paragraph 18.

19.     Regional states that the document speaks for itself and denies all allegations contained in Paragraph 19.

20.     Regional denies the allegations contained in Paragraph 20.

21.     Regional states that the document speaks for itself and denies all allegations contained in Paragraph 21.

22.     Regional denies the allegations contained in Paragraph 22.

23.     Regional denies the allegations contained in Paragraph 23.

24.     Regional denies the allegations contained in Paragraph 24.

25.     Regional denies the allegations contained in Paragraph 25.

WHEREFORE, Regional Development LLC, Walter Brauer. III. and Kimberly A. Brauer respectfully request this Court enter judgment against Plaintiff Champion Bank on Count I of its Complaint, and for all other and further relief this Court deems just and proper.

## COUNT II – BREACH OF CONTRACT

## (SUIT ON GUARANTEE)

26.    For his response to Paragraph 26 of Count II, Walter Brauer incorporates by reference his responses to Paragraphs 1 through 24 of the allegations set forth in Champion's Complaint as if fully set forth herein.

27.    Walter Brauer denies the allegations contained in Paragraph 27.

28.    Walter Brauer denies the allegations contained in Paragraph 28.

29.    Walter Brauer denies the allegations contained in Paragraph 29.

30.    Walter Brauer denies the allegations contained in Paragraph 30.

31.    Walter Brauer denies the allegations contained in Paragraph 31.

32.    Walter Brauer denies the allegations contained in Paragraph 32.

33.    Walter Brauer denies the allegations contained in Paragraph 33.

WHEREFORE, Walter M. Brauer, III respectfully requests that judgment be entered in his favor and against the Plaintiff Champion Bank on Count II of the Complaint, and for all further relief this Court deems just and proper.

## COUNT III:  BREACH OF CONTRACT

## (SUIT ON GUARANTEE)

34.    Kimberly A. Brauer incorporates by reference her responses to paragraph 1 through 24 of the allegations set forth in Champion's Complaint as if fully set forth herein.

35.    Kimberly Brauer denies the allegations contained in Paragraph 35.

36.    Kimberly Brauer denies the allegations contained in Paragraph 36.

37.    Kimberly Brauer denies the allegations contained in Paragraph 37.

38.     Kimberly Brauer denies the allegations contained in Paragraph 38.

39.     Kimberly Brauer denies the allegations contained in Paragraph 39.

40.     Kimberly Brauer denies the allegations contained in Paragraph 40.

41.     Kimberly Brauer denies the allegations contained in Paragraph 41.

42.     Kimberly Brauer denies the allegations contained in Paragraph 42.

WHEREFORE. Kimberly A. Brauer respectfully requests that judgment be entered in her favor and against Plaintiff Champion Bank on Count III of the Complaint and for all other further relief this Court deems just and proper.

## AFFIRMATIVE DEFENSES TO ALL COUNTS

1.     Plaintiff's Complaint fails to state a cause of action upon which relief can be granted.

2.     The claims asserted in the Complaint are barred, either in whole or in part. by the doctrine of laches. estoppel, waiver and/or other equitable limitations.

3.     The claims asserted in the Complaint are barred and/or reduced because of Plaintiff's failure to mitigate damages.

4.     As and for an affirmative defense. Defendants are entitled to reduction in the amount of money from any verdict of any agreements and/or settlements and/or sales of any property as it relates to the property described in Plaintiff's Complaint.

5.     Defendants reserve the right to amend its answer and assert any additional defenses to conform to such facts as may be revealed in discovery or otherwise.

6.     Upon information and belief. as relating to the allegations in Plaintiff's Complaint, Plaintiff did carelessly and negligently conduct itself. that Plaintiff's own fraudulent and reckless acts contributed directly and proximately to Plaintiff's own

injuries and damages in that Plaintiff made representations to Regional Development and Walter M. Brauer, III that were untrue and any damages resulting therefrom are a result of the Plaintiff's own contribution and proximate cause to its own injuries and damages.

7.      Plaintiff's claims fail because it breached its duties of good faith and fair dealing, trust, competence and loyalty owed to Defendants with respect to the parties' prior agreements and dealings.

8.      Plaintiff's claims are barred by the doctrines of unclean hands.

9.      Plaintiff's claims fail as they are barred for the reasons that Plaintiff engaged in fraud and/or misrepresentations against the Defendants, which resulted in fraudulent inducement.

## AFFIRMATIVE DEFENSES AS TO COUNT II

1.      The personal guarantee agreement upon which Plaintiff relies upon against Walter Brauer was the product of coercion, duress and/or mistake of fact, and as such is unenforceable.

2.      The personal guarantee agreement upon which Plaintiff relies upon against Walter Brauer is unenforceable for failure of consideration.

3.      The personal guarantee agreement upon which Plaintiff relies upon against Walter Brauer was the product of fraudulent inducement and as such is void and unenforceable as a matter of law.

## AFFIRMATIVE DEFENSES AS TO COUNT III

1.      The personal guarantee agreement upon which Plaintiff relies upon against Kimberly Brauer was the product of coercion. duress and/or mistake of fact. and as such is unenforceable.

2.      The personal guarantee agreement upon which Plaintiff relies upon against Kim Brauer is unenforceable for failure of consideration.

3.      The guarantee upon which Plaintiff relies was the product of coercion and/or duress and as a result of which is unenforceable as a matter of law.

4.      The personal guarantee agreement upon which Plaintiff relies upon against Kim Brauer was the product of fraudulent inducement and as such is void and unenforceable as a matter of law.

5.      Plaintiff's claim fails as it is barred as a result of violations of federal and state law, including the Federal Equal Credit Opportunity Act.

6.      Plaintiff's claim is barred as the result of fraud and/or misrepresentations to the Defendants.

## COUNTERCLAIMS

Counterclaimants Regional Development, LLC, Walter M. Brauer III, and Kimberly A. Brauer (collectively "Regional Development"). for its cause of action against counterclaim Defendant Champion Bank ("Champion"), hereby states as follows:

1.      Counterclaim Plaintiff Regional Development. LLC. ("Regional Development") is an Illinois limited liability company, with its principal place of business in Alton. Illinois.

2.      Counterclaim Plaintiff Walter M. Brauer III ("Mr. Brauer") is an individual residing in the State of Illinois.

3.      Counterclaim Plaintiff Kimberly A. Brauer ("Mrs. Brauer") is an individual residing in the State of Illinois.

4.      Champion Bank ("Champion") is a Missouri state-chartered bank with its principal place of business in St. Louis County. Missouri, and upon information and belief. is in good standing in the State of Missouri.

5.      This Court has jurisdiction over this litigation pursuant to 28 U.S.C. § 1332 by virtue of diversity of citizenship between the parties of this action and an amount in controversy that exceeds Seventy-Five Thousand and no/100 Dollars ($75,000.00).

6.      This Court has jurisdiction over these claims as the claims stated herein are compulsory and must be brought in this Court pursuant to Fed. R. Civ. Pro. 13(a).

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) as substantial portion of the events that form the basis of this suit occurred in this district.

## ALLEGATIONS COMMON TO ALL COUNTS

8.      At all times hereto, Kim Brauer was the wife of Walter Brauer and had no relationship with Champion Bank nor communicated with Champion Bank.

9.      At all times preceding the actions alleged herein, Walter Brauer was an Advisory Board Member for Champion Bank.

10.     At all times hereto, Walter Brauer was the sole Member and Manager of Regional Development and was acting on its behalf and in that capacity.

11.     In or around 2007. Walter Brauer was open to considering low-risk investment opportunities.

12.     At or around the same time, Michael Anderson, of Carrington Development. ("Anderson") was preparing to take the steps necessary to purchase certain lots in Manchester, Missouri and to obtain appropriate zoning for those lots so that he could develop the lots for residential and/or commercial buildings (the "Project").

13.     The property for the Project by Anderson is commonly known as 307 Forest Parkway and 200 Enchanted Parkway Road, Ballwin, Missouri, 63021 ("Property").

14.     Anderson placed the Property under contract to purchase at a future date.

15.     Upon information and belief, in and around spring 2007, Anderson then sought financing for the Project from various financial institutions.

16.     After being declined by several financial institutions, Anderson met with certain representatives of Champion, including Tim Dix ("Dix"), to discuss the Project.

17.     Upon information and belief, rather than Champion financing the Project directly with Anderson, Champion representatives proposed using a third party to finance the Project.

18.     Champion proceeded to identify potential investor(s) to finance the project despite the fact that no zoning had been approved by the city, no infrastructure plan was in place or approved, and no surveys or appraisals had been conducted.

19.     On his own accord, Lane Alpert, an investment consultant with Champion ("Alpert"), then contacted Walter Brauer regarding the Project. Alpert suggested that Mr. Brauer become the primary developer for the Project, and for Anderson to assist Mr. Brauer in the completion of the Project.

20.     Mr. Brauer was repeatedly told by Alpert that this was a great opportunity, that Anderson was a proven and dependable developer with a stellar reputation, and that all Anderson needed was a money man to make everyone a quick buck.

21.     Anderson and Alpert made repeated representations that the development was in a great location with great projections and sure profitability for all involved.

provided assurances that a final sale price of $1,450,000.00 for the completed Project would be procured, and that the entire project would be completed no later than January 1, 2008.

22.     Alpert and Dix also repeatedly assured Mr. Brauer that all of the zoning, drawings, and other contingencies had already been approved, so that all was needed was a "money man" to bankroll the project since it was sure thing.

23.     At this point in time, and at no point within the months that followed the approval of the loan, was there an approved infrastructure plan in place and zoning was not approved by the City of Manchester.

24.     Thereafter, a Special Sale Contract was entered into between Regional Development and IPX Development 96, LLC for the sale of the Property for Six Hundred Forty Thousand and no/100 Dollars ($640,000.00), with a closing date tentatively set for July 27, 2007, and which was dependent upon Regional Development obtaining a loan commitment by July 6, 2007.

25.     At that time, despite the representations made to Mr. Brauer regarding the profitability and opportunity of the project, and his reliance on the same, Champion had not conducted its diligence or feasibility of the project yet.

26.     At some point thereafter, Champion authorized an appraisal to be made of the property in order to determine the exact amount of money that was needed from Regional Development to finance the project.

27.     On or about July 5, 2007, Champion issued a commitment letter for the borrower, Regional Development, LLC, regarding a loan for One Million One Hundred Five Thousand and no/100 Dollars ($1,105,000.00) for the purchase of land and the

construction of the residential site, and the letter only sought the signature of Regional Development.

28.     Although the commitment letter only required a signature from Regional Development, it was addressed to Mr. and Mrs. Brauer collectively, despite the fact that Mr. Brauer was only involved in his capacity as Member and Manager of Regional Development and that Mrs. Brauer had no communications with Champion and was not and never was associated in any capacity with the loan or Project.

29.     The loan commitment letter also required an appraisal to meet an "as completed" total of $1.474 million or better.

30.     On or about July 26, 2007, an appraisal report was issued to Champion, but not to Regional Development or Mr. Brauer, which indicated that the value improved appraisal estimate for the developed property would be $1.250 million, and the Property held an "as is" value of $650,000.00.

31.     Upon information and belief, the appraisal that was conducted did not accurately measure the risks associated with the Project, was not a reliable indicator of the value of the "completed" Project, and was manipulated to obtain a lower debt-to-equity ratio by adding costs onto the back-end of the Project.

32.     The appraisal came in approximately $200,000.00 less than what had been represented, promised, and assured to Mr. Brauer by representatives of Champion; however, representatives of Champion still assured Mr. Brauer that it was sufficient and that he could rely on this return at a minimum.

33.     On or about August 2, 2007, as a result of the representations provided to Mr. Brauer by Champion, and in reliance on the same, Regional Development executed a

Promissory Note which evidenced a loan from Champion in the original principal amount of Nine Hundred Thirty Seven Thousand Five Hundred Dollars ($937,500.00).

34. The loan was secured by a Deed of Trust on the Property dated August 2, 2007, and recorded on August 7, 2007, in Book 17638 at Page 1232 of the St. Louis County Recorder of Deeds office.

35. At the time of the closing for the loan, Walter Brauer and Kim Brauer, as husband and wife, were required to execute personal guarantee's on behalf of Regional Development.

36. At the time of the closing, Mr. and Mrs. Brauer were unaware that he or his wife would be required to execute a guaranty, and in trust and reliance upon the representations made by Dix and Champion, did not anticipate such a requirement.

37. Champion demanded that Mr. Brauer obtain the signature of his wife, despite the fact that as she was not at the closing, and even though Dix offered to follow Mr. Brauer to his home to obtain her signature, her signature was obtained thereafter.

38. Over the next six months or so, the project encountered countless delays since formal planning had never been approved, the zoning ordinances had not been previously approved, and shortfalls regarding the anticipated amounts of funds that needed to be disbursed for the various work being completed occurred.

39. Despite the representations and promises that a suitable buyer would be found by Champion or Mr. Anderson, no buyers were located.

40. During this period of time, Alpert and Champion continued to assure Regional Development that everything was fine and that the project was moving forward appropriately.

41.     Thereafter, contractors, while preparing the Property for development, hit rock shallower than expected, which suddenly raised the price of the project exponentially.  It was determined that the original plans and appraisal(s) were incorrect, and that substantial additional expenses that were not originally relayed to Mr. Brauer that far exceed the original estimates of cost provided to him by Champion would need to be incurred.

42.     During this time, Mr. Brauer and Regional Development continued to express concern to Champion that a buyer needed to be found, but Mr. Brauer is reassured by Alpert that Anderson is well qualified and that a buyer for the Property will be found shortly.

43.     At or around this time, Mr. Brauer learned that Champion had "stripped" out various items from the original estimation of costs for the Project that were the basis for the amount of the original construction loan, which would have resulted in an unacceptable debt to equity ratio according to the appraisal, and instead built the costs into the backside of the loan so that costs could be added and then paid as the lots were sold, thus decreasing the amount of loan necessary up front, but in actuality, reducing the expected overall profit for the Project and disguising known costs from Regional Development.

44.     In addition, Mr. Brauer also learned around this same time that although the loan amount was calculated in an amount great enough to pay off interest as it accrued during the period of time prior to the sale of the lots and that said interest payments were to be made from the principal loan amount, a demand was made upon him

to begin making interest-only payments for the interest as it accrued on the loan during the pendency of the Project.  This had never previously been discussed with Mr. Brauer.

45.     On July 8, 2008, Mr. Brauer signed a new Promissory Note that extended the maturity of the original $937,500.00 loan indebtedness to October 2, 2008.

46.     In or around September/October, 2008, the Project is put on hold, as Anderson is unable to continue with his lead role as developer, and Regional Development is advised that costs in excess of $200,000 above and beyond the original estimates provided by Champion will need to be incurred to complete the Project.

47.     As a result of the representations of Champion, Regional Development is unable to complete the project in any amount close to the amounts originally provided by Champion, and negotiations stalled between the two parties to refinance or otherwise restructure the loan.

48.     Following the date upon which payments were to begin being made pursuant to the Promissory Note, Champion made demand upon Counterclaim Plaintiffs for payments and thereafter filed suit in this Court.

## COUNT I – EQUAL CREDIT OPPORTUNITY ACT

For her cause of action against Plaintiff Champion Bank, for violations of the Equal Credit Opportunity Act, Counterclaim Plaintiff Kim Brauer states as follows:

49.     Regional Development restates and incorporates by reference Paragraphs 1 through 48 above, as though fully set forth herein.

50.     The Equal Credit Opportunity Act ("ECOA") provides general provisions to prevent discrimination in connection with applications for credit by any person seeking credit.  The ECOA, § 1691, *et seq.*, prohibits a number of activities and defines several

activities that constitute discrimination, including that. "it shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of the credit transaction – (1) on the basis of . . . marital status." 15 U.S.C.S. § 1691(a)(1).

51.     Further, the Federal Reserve's Regulation (b) provides that. assuming the applicant is otherwise qualified, that "a creditor shall not require the signature of an applicant's spouse or other person. other than a joint applicant. on any credit instrument if the applicant qualifies under the creditor's standards of credit worthiness for the amount in terms of the credit requested.  The creditor shall not deem the submission of a joint financial statement or other evidence of jointly held assets as an application for joint credit." 12 CFR 202.7(d)(1).

52.     As stated above. all representations, communications and dialogue were by and between representatives of Champion Bank and Regional Development, and it sole member, Walter Brauer.  At no point in time did Kim Brauer discuss any of the business opportunities or costs associated with the Property or Project.

53.     Kim Brauer never sought credit nor sought to be a part of the any financing related to the project.

54.     Thereafter, on or about July 5. 2007. a commitment letter was issued by Champion to Walter Brauer which required him and his wife to sign as guarantors to the project.  No other individual was presented as a possible guarantor and at no point in time did Mr. Brauer suggest. imply or otherwise insinuate that his wife would be, could be, or should be a guarantor on the loan.

55.     In its commitment letter to Regional Development, and despite the fact that Mrs. Brauer had never been discussed as a potential guarantor, signator or associated

otherwise with the project. Champion Bank required her signature, as well as her husband's signature, as guarantors on the loan.

56.     Throughout the loan application process and the conversations regarding the Project, Regional Development was the only entity that was to be associated with any financing, and Walter Brauer was the only person with whom the bank communicated with and was the only person associated with Regional Development.

57.     In taking said actions, Champion required the signature of Mr. Brauer's spouse on the loan agreement, despite the fact that he was never notified that he did not meet the standards of credit worthiness for the amount in terms of the credit requested, and upon his belief, believes that he was independently credit worthy.

58.     Thus. Champion violated provisions of the Equal Credit Opportunities Act in requiring the signature of Mrs. Brauer.

WHEREFORE. Counterclaim Plaintiff Kimberly A. Brauer. respectfully requests that this Court enter judgment against counterclaim Defendant Champion Bank declaring that the secured Promissory Note is void; award punitive damages pursuant to statute; that Counterclaim Plaintiff's be awarded attorney fees and costs pursuant to § 706(d); that Kimberly A. Brauer be removed as a guarantor pursuant to the Promissory Note and Business Loan Agreement; and for such other and further relief as this Court deems just and proper.

## COUNT II – NEGLIGENT MISREPRESENTATION–DEVELOPER

For their cause of action against Counterclaim Defendant Champion Bank. Counterclaimants Walter Brauer III. Kimberley Brauer. and Regional Development state as follows:

59.     Counterclaim Plaintiffs hereby restate and incorporate by reference Paragraphs 1 through 48 above. as though fully set forth herein.

60.     At all times hereto, Champion was a state-chartered bank in the business of lending and providing financial advice to its customers.

61.     Mr. Brauer relied and depended upon Champion as a result of his position as a customer and client, as well as an Advisory Board Member of Champion.

62.     In the course of its business, Champion supplied information to Mr. Brauer and Regional Development as it related to the profitability. its assessment of viability, and the probable success of the project and the development of the Property.

63.     Said representations included the reliability. experience. dependability of Anderson, the head developer of the Project for the Property.

64.     Representatives of Champion made assertions, representations, and statements of fact to Mr. Brauer and Regional Development that included. but are not limited to, assertions that Anderson was a developer with a proven track record; that Anderson would be able to provide potential buyers for the land once it was developed; that Anderson could be relied upon and would be a reliable developer: that Anderson was trustworthy; that Anderson would be a valuable asset to the development of the Property, and that Mr. Brauer and Regional Development would be in good hands by using Anderson as its figurehead and representative throughout the development of the Property.

65.     Because Champion failed to exercise reasonable care. the information provided to Regional Development and Mr. Brauer was false.

66.     Said information was intentionally provided by Champion to Mr. Brauer and Regional Development for their guidance in the particular transaction involving the project at the Property.

67.     Mr. Brauer and Regional Development justifiably relied upon the information provided to them by Champion.

68.     As a result of Regional Development and Mr. Brauer's justified reliance on the information provided to them by Champion, Regional Development, as well as Mr. and Mrs. Brauer, have suffered a pecuniary loss.

69.     At all times, Champion failed to exercise reasonable care and competence or obtain or communicate true information to Mr. Brauer and Regional Development which it knew or should have known.

WHEREFORE, Counterclaim Plaintiff's Regional Development, Walter M. Brauer III, and Kimberly A. Brauer respectfully request that the Court enter judgment against Counterclaim Defendant Champion Bank in an amount to be proven at trial, which includes but is not limited to, damages incurred by the Counterclaim Plaintiffs in the form of actual and consequential damages, including damages suffered as a result of this lawsuit and out-of-pocket expenses as it related to the association with Anderson, losses as a result of damaged credit; and for all other and further relief this Court deems just and proper.

## COUNT III – NEGLIGENT MISREPRESENTATION –

## PROFITABILITY OF VENTURE

For their second cause of action against Counterclaim Defendant Champion Bank,
Counterclaimants Walter Brauer III, Kimberley Brauer, and Regional Development state
as follows:

70. Regional Development hereby restates and incorporates by reference
Paragraphs 1 through 48 above, as though fully set forth herein.

71. At all times hereto, Champion Bank was in the lending and financial
advising industry and in that role provided advice and instruction to the Counterclaim
Plaintiffs.

72. In the course of Champion's business of loaning and inducing investors to
loan through their leads, Champion supplied information to Mr. Brauer and Regional
Development as it related to the development of the Property.

73. Said information includes, but is not limited to, representations made by
Champion to Mr. Brauer and Regional Development, including representations that the
development of the Property was a great idea and showed promise; that a profitable rate
of return was a sure thing; that a proper appraisal would be conducted and that the
appraisal would result in showing a definite profitability of the venture; that Champion
manipulated the estimates of the constructions costs to ensure a viable loan-to-value ratio;
that Champion allowed a continued draw to Anderson despite his eroding performance;
that Champion erred in not notifying Regional Development of the interest carry
provision; that Champion would take all steps necessary to provide a realistic expectation
for Regional Development; that Regional Development could place its trust and

confidence in Champion as a result of its superior position as a lender and as a bank to Regional Development; and that the appraisals undertaken and collaborated upon by Champion indicated that there was sure money to be made by the venture.

74.     Because of the failure by Champion to exercise reasonable care, the information provided to Regional Development and Mr. Brauer was false.

75.     This information was intentionally provided by Champion to Regional Development for the guidance of it in a particular business transaction involving the Property.

76.     Regional Development justifiably relied upon the information provided to it by Champion.

77.     Due to Regional Development's justified reliance on the information, Regional Development, as well as Mr. and Mrs. Brauer, have suffered a pecuniary loss.

78.     This loss includes actual damages and consequential damages.

WHEREFORE, Counterclaim Plaintiffs Regional Development, LLC, Walter M. Brauer III and Kimberly A. Brauer respectfully request that the Court enter judgment against Counterclaim Defendant Champion Bank in an amount to be determined at trial for actual and consequential damages as a result of the actions of Champion, and for all such other and further relief as this Court deems just and proper.

**RIEZMAN BERGER, P.C.**

By: _/s/ Nelson L. Mitten_____
Nelson L. Mitten, EDMO 3873
Joseph D. Schneider, EDMO 520527
7700 Bonhomme, 7th Floor
St. Louis, Missouri  63105
Phone:  (314) 727-0101
FAX:   (314) 727-6458

**ATTORNEYS FOR DEFENDANTS**


## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of January, 2009, this document was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Michael A. Campbell
100 South 4th Street, Suite 1100
St. Louis, Missouri  63102


_/s/ Nelson L. Mitten_