UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CHAMPION BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:08CV1807 CDP |
| | ) | |
| REGIONAL DEVELOPMENT, LLC, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

# **MEMORANDUM AND ORDER**

Defendant Regional Development Company took out a loan from plaintiff Champion Bank so that Regional could invest in a residential and commercial development project. The project never materialized as planned, and Regional failed to make payments owed to Champion under the loan. According to Champion's complaint, Regional now owes Champion a principal amount of $931,856.81 plus certain interest and fees. Regional and its guarantors, Walter and Kimberly Brauer, have pled three counterclaims along with a number of affirmative defenses in their answer. Champion has moved to dismiss or strike the counterclaims and affirmative defenses under Fed. R. Civ. P. 12(b)(6) and 12(f). I conclude that Kimberly Brauer's counterclaim under the Equal Credit Opportunity Act is not sustainable, because Mrs. Brauer cannot show

discrimination merely by the fact that she guaranteed a loan. I will therefore grant Champion's motion to dismiss defendants' ECOA counterclaim, and I will strike the accompanying affirmative defense. I will deny Champion's motion in all other respects.

## Background

Defendant Walter Brauer is the sole member and manager of Regional Development. As a condition for granting Regional a loan for the development project, Champion required Walter to execute a commercial guaranty on the loan. In addition, the bank required Walter's wife Kimberly Brauer to execute a commercial guaranty of her own. Kimberly Brauer states that, aside from her signature on the guaranty, she had no involvement of any kind in the development project, and she never discussed the project with Champion Bank.

For their part, Regional Development and Walter Brauer allege that Champion misled them by supplying false information about the profitability and likely success of the project. In particular, defendants allege, Champion made certain representations about Michael Anderson, the project's lead developer. Defendants say that Champion told them that Anderson was an experienced and reliable developer with a proven track record, that the project showed great promise, and that a profitable rate of return was a "sure thing." According to defendants, none of these things turned out to be true.

In total, Defendants assert three counterclaims against Champion Bank. Mrs. Brauer brings one counterclaim under the Equal Credit Opportunity Act, 15 U.S.C. § 1601 *et seq*. Mrs. Brauer argues that it was unlawful under the Act for Champion to require her signature as a guarantor, and as a consequence, she cannot be held liable for Regional's note. Additionally, all defendants assert two counts of negligent misrepresentation based on Champion's assertions regarding Mr. Anderson and the profitability of the venture. Champion has moved to dismiss all three counterclaims, as well as a number of related affirmative defenses.

## Discussion

A defendant (or counterclaim defendant) may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Fed. R. Civ. P. 12(b)(6). The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. While the complaint need not contain detailed factual allegations, the plaintiff must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). When considering a 12(b)(6) motion, a court must assume that the factual allegations of the complaint are true and must construe these allegations in favor of the plaintiff. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

A complaint should not be dismissed merely because the court doubts that a plaintiff will be able to prove all the necessary allegations. *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997). The issue is not whether the plaintiff will ultimately prevail but whether he is entitled to present evidence to support his claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

A. <u>Equal Credit Opportunity Claim</u>

Under the Equal Credit Opportunity Act, it is "unlawful for any creditor to discriminate against any applicant with respect to any aspect of a credit transaction" on the basis of the applicant's marital status. 15 U.S.C. § 1691. Kimberly Brauer argues that Champion's requirement that she guarantee a note issued for her husband's development business was a violation of ECOA. In support of this argument, Mrs. Brauer points to regulations issued by the Federal Reserve Board that interpret the relevant ECOA provision. According to the Fed's regulations, an "Applicant" as that term is used in the ECOA, means "any person who requests or has received an extension of credit from a creditor, and includes any person who is or may become contractually liable for purposes of extensions of credit. For purposes of § 202.7(d), the term includes guarantors, sureties, endorsers, and similar parties." 12 C.F.R. § 202.2(e).

Section 202.7(d) then sets forth an additional rule relating to guarantors. Under that section, "a creditor shall not require the signature of an applicant's

spouse or other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested." In other words, if an applicant is qualified for a loan, or if a credit-worthy applicant guarantees a loan, a lender cannot insist that the applicant's spouse also assume liability. Kimberly Brauer thus argues that Champion cannot rely on a signature that it was not legally permitted to require. *See Integra Bank/Pittsburgh v. Freeman*, 839 F. Supp. 326, 329 (E.D. Pa. 1993).

At least one circuit court has raised serious concerns about the validity of the regulation that underlies this type of ECOA claim. *See Moran Foods, Inc. v. Mid-Atlantic Market Devel. Co.*, 476 F.3d 436 (7th Cir. 2007). In *Moran Foods*, the Seventh Circuit noted that the text of the ECOA prohibits discrimination against "applicants" on the basis of, among other things, gender or marital status. The Federal Reserve's regulation then holds that the term "applicant" includes guarantors. But it is not at all clear that the term "applicant" can reasonably be interpreted this way. *Id*. at 441. A guarantor is not an applicant because a guarantor does not, by definition, apply for anything. Moreover, a guarantor cannot be denied credit for which he or she did not apply, and thus it is difficult to conceive how a guarantor can claim to have been discriminated against. *Id.* Ordinarily, courts defer to administrative regulations when statutory language is

ambiguous. *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559-60 (1980). But, as noted by the Seventh Circuit, there is nothing inherently ambiguous about the term "applicant," and interpreting that term to mean something other than what it says is unreasonable.

I find the reasoning of the Seventh Circuit in *Moran Foods* to be persuasive. The purpose behind the ECOA is to "eradicate credit discrimination waged against women, especially married women whom creditors traditionally refused to consider for individual credit." *Anderson v. United Finance Co.*, 666 F.2d 1274, 1277 (9th Cir. 1982). *See also Markham v. Colonial Mortgage Service Co.,* 605 F.2d 566, 569 (D.C. Cir. 1979) ("[O]ne, perhaps even the main, purpose of the [ECOA] was to eradicate credit discrimination waged against women, especially married women whom creditors traditionally refused to consider apart from their husbands as individually worthy of credit."). To that end, the statute prohibits discrimination (i.e., denying credit, or offering credit on less favorable terms) to someone merely because of her gender or marital status. *See Rowe v. Union Planters Bank of Southeast Mo.*, 289 F.3d 533, 535 (8th Cir. 2002) (stating that the elements of a prima facie ECOA claim are (1) plaintiff is a member of a protected class; (2) plaintiff applied for and was qualified for a loan; (3) the loan was rejected despite plaintiff's qualifications; (4) the bank continued to approve loans for applicants with similar qualifications).

Extending the protections of the ECOA to someone in Kimberly Brauer's position expands the ECOA beyond its intended purpose and leads to circular and illogical results. Kimberly Brauer cannot show discrimination by virtue of the fact that she chose to guarantee her husband's business loan.[1] She was never denied anything, and there is no logical remedy that would make her whole. *See Diamond v. Union Bank & Trust*, 776 F. Supp. 542, 544 (N.D. Okla. 1991) (noting that the majority of courts have held that an ECOA violation, even if proved, does not provide a basis for voiding the underlying obligation). *See also CMF Virginia Land, L.P. v. Brinson,* 806 F. Supp. 90 (E.D. Va. 1992) ("Invalidation of the debt itself is a remedy too drastic for the Court to implement simply by reading between the lines of the ECOA."). More importantly, Kimberly Brauer claims to come within the protections of ECOA only by virtue of the fact that she is now a guarantor (or "applicant," as the Federal Reserve interprets that term). But the very thing she is protesting is that she has been made a guarantor in the first place. Mrs. Brauer cannot claim that she has rights under a statute while simultaneously asserting that she should not be a member of the class of people the statute is

---

[1] Mrs. Brauer pleads in her counterclaim that she was "required" by the bank to guarantee the loan. While the bank may have indeed insisted on Mrs. Brauer's signature, for reasons discussed above, that cannot form the basis for a discrimination claim by Mrs. Brauer. Fairly read, the regulations cited by Mrs. Brauer would logically prohibit the bank from denying credit to *Mr. Brauer* because his wife refused to guarantee the loan. Had Mrs. Brauer refused to guarantee the loan, the bank would not have been in any position to deny Mr. Brauer credit (assuming he was credit worthy). But having agreed to guarantee the note, Mrs. Brauer lacks a basis for claiming she suffered any discrimination.

designed to protect. This circular argument does not state a claim for relief. For these reasons, Champion's motion to dismiss Kimberly Brauer's ECOA counterclaim (and to strike the accompanying ECOA affirmative defense) will be granted.

B. <u>Negligent Misrepresentation Claims</u>

Defendants allege in their second and third counterclaims that Champion Bank made certain negligent misrepresentations regarding the profitability of the proposed venture and the reliability and trustworthiness of the lead developer on the project. In Missouri, a claim for negligent misrepresentation has five elements: (1) the speaker supplied information in the course of his business; (2) because of the speaker's failure to exercise reasonable care, the information was false; (3) the information was intentionally provided by the speaker for the guidance of limited persons in a particular business transaction; (4) the hearer justifiably relied on the information; and (5) because of the hearer's reliance on the information, the hearer suffered a pecuniary loss. *Midwest Bankcentre v. Old Republic Title Co. of St. Louis*, 247 S.W.3d 116, 129-30 (Mo. Ct. App. 2008). In addition, a claim for negligent misrepresentation generally cannot be based on unfulfilled promises or statements as to future events, unless the statement is a representation of the speaker's present intention or concerns matters within the speaker's control. *Wellcraft Marine v. Lyell*, 960 S.W.2d 542, 547 (Mo. Ct. App.

1998); *see also Eureka Pipe, Inc. v. Cretcher-Lynch & Co.*, 754 S.W.2d 897 (Mo. Ct. App. 1988). Reliance on such statements is presumed to be unreasonable, and thus the forth element of the claim is not satisfied. *Wellcraft Marine*, 960 S.W.2d at 547.

Champion Bank argues that the defendants' counterclaims for negligent misrepresentation rest solely on statements regarding future events and the actions of third parties. Based on the allegations contained in defendants' counterclaim, it is premature to draw any such conclusion. Defendants allege that Champion Bank "supplied information . . . related to profitability, its assessment of viability, and the probable success of the project," as well as the "reliability, experience, dependability of Anderson." Without the benefit of knowing exactly what these statements were and how they were made, it is impossible to tell whether the statements were confined exclusively to future events or the future actions of third parties. Champion's motion to dismiss the counterclaims for negligent misrepresentation will be denied.

C.  <u>Remaining Affirmative Defenses</u>

Lastly, Champion has moved to strike eleven affirmative defenses from defendants' answer. "Motions to strike under Fed. R. Civ. P. 12(f) are viewed with disfavor and are infrequently granted." *Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir. 1977). Such motions should not be granted "unless, as a matter

of law, the defense cannot succeed under any circumstances." *FDIC v. Coble*, 720 F. Supp. 748, 750 (E.D. Mo. 1989). For reasons discussed above, Kimberly Brauer's affirmative defense on the basis of the Equal Credit Opportunity Act cannot be maintained and will be stricken. Defendants' remaining affirmative defenses are adequately pled, and Champion's motion with respect to those defenses is denied.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion [#10] to dismiss defendants' counterclaims is granted in part and denied in part. Defendants' Count I based on the Equal Credit Opportunity Act is DISMISSED. Plaintiff's motion is denied in all other respects.

**IT IS FURTHER ORDERED** that plaintiff's motion [#12] to strike affirmative defenses is granted in part and denied in part. Defendants' affirmative defense based on the Equal Credit Opportunity Act is stricken. Plaintiff's motion is denied in all other respects.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 13th day of May, 2009.